1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| GABRIEL TELLES and MIGUEL ANGEL LOPEZ SANTIAGO, | ) ) ) | Case No.: 5:11-CV-01470-LHK |
| Plaintiffs, | ) ) | ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT |
| v. | ) ) ) | |
| SU JUAN LI d/b/a MA'S RESTAURANT; LAVENDER INVESTMENT, INC. d/b/a MA'S RESTAURANT; YURONG LIANG d/b/a MA'S RESTAURANT; GOLDEN CREEK INVESTMENT, INC.; MA'S RESTAURANT, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Gabriel Telles ("Telles") and Miguel Angel Lopez Santiago ("Santiago") (collectively,

"Plaintiffs") bring this action against Su Juan Li d/b/a Ma's Restaurant ("Li"); Lavender

Investment, Inc. d/b/a MA's Restaurant ("Lavender"); Yurong Liang d/b/a Ma's Restaurant

("Liang"); Golden Creek Investment, Inc. ("GCI"), and Ma's Restaurant, (collectively,

"Defendants") seeking damages arising from Defendants' failure to pay overtime as required by

the Fair Labor Standards Act ("FLSA") and the California Wage Orders and statutes.  Plaintiffs,

who are Defendants' former employees, allege that Defendants failed to compensate Plaintiffs for

overtime wages and failed to provide adequate pay statements.

Entry of default was entered against Liang, Li, Lavender, and GCI on December 8, 2011.

ECF Nos. 25, 26, 27, 28.  Entry of default was entered against Ma's Restaurant on April 18, 2013.

ECF No. 41.  As explained in greater detail below, the Court denied without prejudice Plaintiffs' first request for entry of default judgment against Defendants.  ECF No. 39.  With this second request, Plaintiffs have addressed most of the deficiencies, although the amounts Plaintiffs request for unpaid overtime compensation, liquidated damages, and attorneys' fees require adjustment. The Court therefore GRANTS the motion for entry of default judgment but in amounts different than Plaintiffs' request.

## I.        BACKGROUND

**A.        Factual Background**

Plaintiffs were employed by Ma's Restaurant in San Jose, California from early 2009 until 2011.  Santiago Decl. ¶¶ 2, 18; Telles Decl. ¶¶ 2, 20.  Santiago began working for Ma's Restaurant on or about January 23, 2009, and left his employment on or about May 8, 2011.  Santiago Decl. ¶¶ 2, 18.  Telles began working for the restaurant on or about January 30, 2009, and was terminated on or about February 12, 2011.  Telles Decl. ¶¶ 2, 20.  Li supervised Plaintiffs, and Defendants paid Plaintiffs in cash throughout their employment.  Telles Decl. ¶¶ 3, 14; Santiago Decl. ¶¶ 3, 14. Defendants did not have a method for tracking either Plaintiffs' start or stop times for their respective work shifts.  Telles Decl. ¶ 5; Santiago Decl. ¶ 5.

Santiago's job duties included washing dishes and cooking, and he did not have any supervisory or management duties.  Santiago Decl. ¶¶ 4, 11.  Although he does not remember his exact start and stop times for every shift, Santiago provides the following schedule as his memory of the shifts he worked:

| | |
|---|---|
| Monday: | 10:30 a.m. to 2:45 p.m., 4:45 p.m. to 9:30 p.m. |
| Tuesday: | 10:30 a.m. to 2:45 p.m., 4:45 p.m. to 9:30 p.m. |
| Wednesday: | Off |
| Thursday: | 10:30 a.m. to 2:45 p.m., 4:45 p.m. to 9:30 p.m. |
| Friday: | 10:30 a.m. to 2:45 p.m., 4:45 p.m. to 10:00 p.m. |
| Saturday: | 10:30 a.m. to 2:45 p.m., 4:45 p.m. to 10:00 p.m. |
| Sunday: | 10:30 a.m. to 2:45 p.m., 4:45 p.m. to 9:45 p.m. |

Santiago Decl. ¶ 9.

Case No.: 11-CV-01470-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT WITH LEAVE TO AMEND

United States District Court
For the Northern District of California

For the first three weeks of his employment, Santiago was paid $600 every two weeks. Santiago Decl. ¶ 12.  Beginning in February 2011, Santiago's pay increased to $700 every two weeks.  Santiago Decl. ¶ 13.  Defendants never provided Santiago any paystubs for the shifts he worked.  Santiago Decl. ¶ 16.  Santiago states Defendants never paid him overtime for the hours he worked over 40 in a week.  Santiago Decl. ¶ 17.

Telles' job responsibilities entailed preparing food, cooking, and cleaning kitchen equipment, and he did not have any supervisory or management duties.  Telles Decl. ¶¶ 4, 11.  Like Santiago, Telles does not remember the exact start and stop times of his shifts.  Telles Decl. ¶ 6. Telles also offers a schedule that he states represents his best memory of the shifts he worked:

| | |
|---|---|
| Monday: | 10:30 a.m. to 2:45 p.m., 4:45 p.m. to 9:30 p.m. |
| Tuesday: | 10:30 a.m. to 2:45 p.m., 4:45 p.m. to 9:30 p.m. |
| Wednesday: | Off |
| Thursday: | 10:30 a.m. to 2:45 p.m., 4:45 p.m. to 9:30 p.m. |
| Friday: | 10:30 a.m. to 2:45 p.m., 4:45 p.m. to 10:00 p.m. |
| Saturday: | 10:30 a.m. to 2:45 p.m., 4:45 p.m. to 10:00 p.m. |
| Sunday: | 10:30 a.m. to 2:45 p.m., 4:45 p.m. to 9:45 p.m. |

Telles Decl. ¶ 9.

For the first six months of Telles' employment, Defendants paid Telles a salary of $900 every two weeks.  Telles Decl. ¶ 12.  Starting on or about July 1, 2009, Defendants increased the amount of Telles' salary to $950 and paid Telles on the 5th and 20th of every month.  Telles Decl. ¶ 13.  Telles states that during the winter of 2009, he requested that Li pay his salary in checks rather than cash.  Telles Decl. ¶ 15.  Li refused to pay Telles by check because Telles was undocumented.  Telles Decl. ¶ 16.  As with Santiago, Defendants never provided Telles paystubs for his wages.  Telles Decl. ¶ 18.

**B.    Procedural History**

Telles filed this action individually on March 25, 2011, naming Li and Lavender as Defendants.  ECF No. 1 (Compl.).  On August 12, 2011, Telles amended the complaint to add Santiago as a plaintiff and Liang, GCI, and Ma's Restaurant as defendants.  ECF No. 8 (First Am.

Case No.: 11-CV-01470-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT WITH LEAVE TO AMEND

United States District Court
For the Northern District of California

Compl. ("FAC")).  In the FAC, Plaintiffs brought several claims: (1) violations of Cal. Labor Code § 510 (failure to pay overtime wages); (2) violations of various provisions of the FLSA, 29 U.S.C. § 201, *et seq.* (failure to pay overtime damages and liquidated damages)[1]; (3) violations of Cal. Labor Code § 201 (failure to pay wages due and "waiting time" penalties); and (4) violations of Cal. Labor Code § 226 (inadequate pay statements).  Plaintiffs also reference a claim under Cal. Bus. & Prof. Code § 17200 in the prayer for damages and in Plaintiffs' Motion for Default Judgment, but the FAC does not include a Section 17200 claim.

At Plaintiffs' request, on December 9, 2011, notices of default were entered as to Li, Liang, GCI, and Lavender, although no default was requested or entered against Ma's Restaurant.  ECF Nos. 25, 26, 27, 28.  On May 23, 2012, Plaintiffs filed a Notice of Motion for Default Judgment and Memorandum of Points and Authorities in Support Thereof.  ECF No. 34.  This motion was originally before the Honorable Howard R. Lloyd, and was subsequently transferred to the undersigned on May 30, 2012.  ECF No. 36.  On February 27, 2013, Plaintiffs filed a Second Motion for Default Judgment as to all Defendants.  ECF No. 38.

On March 20, 2013, the Court issued a decision regarding Plaintiffs' motion.  ECF No. 39 (Order Denying Without Prejudice Motion for Default Judgment).  In reviewing Plaintiffs' request for default judgment, the Court noted inconsistencies in the documents filed in support of the Second Motion for Default Judgment, including the lack of default against Ma's Restaurant and an improper case number listed in the caption.  *Id.*  The Court also observed discrepancies in the declarations and numbers offered to support the judgment request.  *Id.*  Finding these inconsistencies undermined the Court's confidence in the request, the Court denied Plaintiffs' motion but gave Plaintiffs leave to amend.  *Id.*

On April 16, 2013, Plaintiffs requested entry of default against Ma's Restaurant, which the Clerk granted on April 18, 2013.  ECF Nos. 40, 41.  On April 19, 2013, Plaintiffs filed a Third Motion for Default Judgment again as to all Defendants, which the Court considers in this order.  ECF No. 42.  Plaintiffs represent that the Third Motion corrects the deficiencies and discrepancies of the Second Motion.

---

[1] Plaintiffs' Motion for Default Judgment seeks only liquidated damages under the FLSA.

Case No.: 11-CV-01470-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT WITH LEAVE TO AMEND

## II.      LEGAL STANDARD

Pursuant to Rule 55(b)(2), the court may enter a default judgment when the clerk, under Rule 55(a), has previously entered the party's default.  Fed. R. Civ. P. 55(b).  Under Federal Rule of Civil Procedure 55(b)(2), a party may apply to the court for entry of judgment by default.  When a party against whom a default judgment is sought has appeared personally or by a representative, "that party or its representative must be served with written notice of the application at least 7 days before the hearing."  *Id.*

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Once the Clerk of Court enters default, all well-pleaded allegations regarding liability are taken as true, except with respect to damages.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Philip Morris USA v. Castworld Prod., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of [plaintiff's] averments.").  In exercising its discretion to enter default judgment, the court may consider the following *Eitel* factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## III.      DISCUSSION

### A.      Whether Default Judgment is Proper

#### 1.      Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  The Court thus begins with determining whether the Court properly may exercise subject matter jurisdiction over this case and personal jurisdiction over the parties.

United States District Court
For the Northern District of California

### a.    Subject Matter Jurisdiction

Beginning with subject matter jurisdiction, the Court finds the exercise of subject matter jurisdiction over this case is proper.  "[A] federal court may exercise federal-question jurisdiction if a federal right or immunity is an element, and an essential one, of the plaintiff's cause of action." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1086 (9th Cir. 2009); *see also* 28 U.S.C. § 1331.  Plaintiffs assert claims under the FLSA and various California wage and hour statutes.  FAC ¶¶ 15-44.  The FLSA establishes a federal right for qualified employees to overtime pay for hours worked over the maximum hours set in the FLSA and to liquidated damages for violations of the FLSA.  29 U.S.C. § 216(b).  As such, a FLSA cause of action raises a federal question, and the Court properly may exercise subject matter jurisdiction over the FLSA cause of action.  Because the state law claims arise out of the same factual allegations as the FLSA cause of action, the Court exercises supplemental jurisdiction over those claims.  28 U.S.C. § 1367(a).

### b.    Personal Jurisdiction

The Court turns now to the question of whether the exercise of personal jurisdiction over Defendants is proper.  Plaintiffs allege that Lavender has its principal place of business in San Jose.  FAC ¶ 5.  Plaintiffs allege that Li and Liang are individuals doing business in Santa Clara County, California and that GCI is a corporation doing business in Santa Clara County, California.  FAC ¶¶ 3, 4, 5.  Despite the FAC's case caption listing Ma's Restaurant as a d/b/a for Li, Lavender, and Liang, the FAC only alleges that Lavender does business as Ma's Restaurant in California.  FAC ¶ 5.  The FAC makes no specific allegations describing the status of Ma's Restaurant.  However, the FAC does allege that Plaintiffs were employed by Li, Liang, GCI, and Ma's Restaurant in California.  FAC ¶¶ 8, 10, 11, 19, 20.

Because no federal statute governs personal jurisdiction, the Court "applies the law of the state in which the court sits."  *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  California's long-arm statute governing personal jurisdiction, Cal. Civ. Proc. Code § 410.10, is coterminous with federal due process requirements.  *Id.*  With those due process requirements in mind, the Court addresses its jurisdiction over Defendants.

6

United States District Court
For the Northern District of California

### i.       Lavender

Plaintiffs allege that Lavender's principal place of business is in San Jose, California.  FAC ¶ 5.  A corporation is considered domiciled in the states where the corporation is incorporated and has its principal place of business.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011).  Under federal due process, defendants domiciled within a state are subject to the state's jurisdiction.  *Milliken v. Meyer*, 311 U.S. 457, 462 (1940).  Because Lavender is domiciled in California, the Court may exercise personal jurisdiction over it.  *Milliken*, 311 U.S. at 462.

### ii.      Li, Yiang, GCI

Plaintiffs' allegations regarding Li, Yiang, GCI, and Ma's Restaurant on the other hand, do not indicate that any of them are residents of California.  "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Mavrix*, 647 F.3d at 1223 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Personal jurisdiction over non-residents can arise under either general or specific jurisdiction.  *Id.* at 1223, 1227.  "For general jurisdiction to exist, a defendant must engage in continuous and systematic general business contacts."  *Id.* at 1223 (internal citations and quotations omitted).  For specific jurisdiction, the Court applies a three-prong test to determine specific jurisdiction: (1) the defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof"; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."  *Id.* at 1227-28.  Because the Court finds that the allegations regarding Li, Yiang, GCI, and Ma's Restaurant suffice under specific jurisdiction, the Court does not address general jurisdiction.

### I.      Purposeful Direction

The standard under the first prong of the test differs for claims sounding in tort and claims sounding in contract.  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d

7

1199, 1206 (9th Cir. 2006).  For tort claims, the "purposeful direction" standard generally applies, and for contract claims, the "purposeful availment" test generally applies.  *Id.*  Although a FLSA cause of action ostensibly arises from an employment contract, courts have likened FLSA claims to tort claims and have applied the purposeful direction standard.  *See Enriquez v. Interstate Group, LLC*, No. 11-CV-05155 YGR, 2012 WL 3800801, at *3 (N.D. Cal. Aug. 31, 2012) (applying purposeful direction to FLSA claim); *Holliday v. Lifestyle Lift, Inc.*, No. C 09-4995 RS, 2010 WL 3910143, *3 (N.D. Cal. Oct. 5, 2010) (noting that policy of denying overtime compensation more comfortably fits within the "purposeful direction" analysis).

To satisfy the purposeful direction standard, Li, Yiang, GCI, and Ma's Restaurant's activities must satisfy the three-part "effects test."  *Schwarzenegger*, 374 F.3d at 802.  Li, Yiang, GCI, and Ma's Restaurant must have (1) committed an intentional act; (2) expressly aimed at the forum state; (3) which caused harm that Li, Yiang, GCI, and Ma's Restaurant knew was likely to be suffered in the forum state.  *Id.*  Plaintiffs allege that throughout Plaintiffs' employment, Li, Yiang, GCI, and Ma's Restaurant required Plaintiffs to work longer than 40 hours per week but did not pay overtime for the hours over 40 worked.  FAC ¶¶ 8, 17.  The Court finds these allegations satisfy the "purposeful direction" standard.

For the first prong, "intent in the context of the 'intentional act' test refers to an intent to perform an actual physical act in the real world, rather than an intent to accomplish a result or consequence of that act."  *Schwarzenegger*, 374 F.3d at 806.  Li, Yiang, GCI, and Ma's Restaurant's refusal to pay Plaintiffs overtime compensation reflect an intentional act that satisfies the first prong.  *See Enriquez*, 2012 WL 3800801, at *4 (finding defendants' policy of not paying overtime compensation was an "intentional act"); *Holliday*, 2010 WL 3910143, at *4 (same).

For the second prong, the "intended impact" must be "targeted at a known individual who has a substantial, ongoing connection to the forum."  *Fiore v. Walden*, 688 F.3d 558, 578 (9th Cir. 2011).  Li, Yiang, GCI, and Ma's Restaurant's employment of Plaintiffs in California and failure to pay overtime compensation reflect an action that targets known individuals – Plaintiffs – in California.  *See Enriquez*, 2012 WL 3800801 at *5 (finding that operating retail stores in California and applying policy of denial of overtime satisfied second prong).

8

United States District Court
For the Northern District of California

For the third prong, the harm in the forum state must be foreseeable. *Id.* Li, Yiang, GCI, and Ma's Restaurant's employment of Plaintiffs in California and failure to pay overtime compensation to Plaintiffs likewise satisfies the third prong because Li, Yiang, GCI, and Ma's Restaurant could reasonably foresee that their failure to pay Plaintiffs overtime would result in harm to Plaintiffs in California. *Id.* (finding that application of policy to deny overtime in California satisfied third prong because harm in forum state was reasonably foreseeable).

Accordingly, the "purposeful direction" prong is satisfied.

## II.    Forum-Related Activities

The second prong of the personal jurisdiction analysis is satisfied if Li, Yiang, GCI, and Ma's Restaurant's activities arise out of or relate to their forum-related activities. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). The Ninth Circuit follows the "but for" test, which requires Plaintiffs to show that Plaintiffs "would not have suffered an injury 'but for'" Li, Yiang, GCI, and Ma's Restaurant's forum-related conduct. *Id.*

Plaintiffs assert that Li, Yiang, GCI, and Ma's Restaurant failed to pay Plaintiffs overtime compensation to which Plaintiffs were entitled while Plaintiffs were employed by Li, Yiang, GCI, and Ma's Restaurant in California. FAC ¶¶ 8, 10, 11, 19, 20. The "but for" test is satisfied because Plaintiffs' overtime claims are the result of Li, Yiang, GCI, and Ma's Restaurant's failure in California to pay Plaintiffs overtime compensation to which Plaintiffs were entitled. *See Enriquez*, 2012 WL 3800801 at *5 (finding "but for" test satisfied where defendant maintained unlawful overtime policies in California stores, resulting in plaintiffs' claims).

## III.    Reasonableness

"Once it has been decided that a defendant purposefully established minimum contacts with a forum, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable in order to defeat personal jurisdiction." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (internal quotations and citations omitted). Because Plaintiffs have satisfied the first two prongs and no facts before the Court suggest that the exercise of personal jurisdiction is unreasonable, the Court finds the third prong also is satisfied.

Having determined that the exercise of subject matter jurisdiction and personal jurisdiction is appropriate, the Court turns now to the *Eitel* factors to determine whether entry of default judgment against Defendants is warranted.

### 2.    First *Eitel* Factor: Possibility of Prejudice

Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if default judgment is not entered against a defendant.  Absent a default judgment, Plaintiffs in this case will not obtain wages to which Plaintiffs are entitled and for which they have already worked.  Thus, the first factor weighs in favor of granting of default judgment.

### 3.    Second and Third *Eitel* Factors: Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors address the merits and sufficiency of Plaintiffs' claims pled in the complaint.  These two factors are often analyzed together.  *See Dr. JKL Ltd. V. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010).  In its analysis of the second and third *Eitel* factors, the Court will accept as true all well-pleaded allegations regarding liability.  *See Fair Hous. of Marin*, 285 F.3d at 906.  The Court will therefore consider the merits of Plaintiffs' claims, and the sufficiency of its pleadings together.

#### a.    Failure to Pay Overtime Under California and Federal  Law

California Labor Code Section 1194(a) states that "any employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." *See* Cal. Lab. Code § 1194.  "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." *See* Cal. Lab. Code § 510(a).  Under federal law, the legal overtime pay rate for employees is one and one-half times an employee's regular hourly rate of pay for work performed in excess of 40 hours in a workweek.  29 U.S.C. § 207(a)(1).  The FAC alleges that Plaintiffs routinely worked in excess of eight hours in a day and 40 hours in a week and that Defendants willfully failed to pay them time and a half for that time.  FAC ¶¶ 10, 11, 17.

10

Both California and federal law exempt certain classes of employees from the protections regarding overtime compensation, including administrative, executive, and management employees.  29 U.S.C. § 213; Cal. Lab. Code § 515(a).  Plaintiffs allege that Plaintiffs never performed management or administrative duties, that Plaintiffs never exercised independent discretion and judgment, and that Plaintiffs were not required to use invention or imagination in an artistic endeavor.  FAC ¶ 13.  Plaintiffs further allege that Plaintiffs never managed a division of the restaurant, never developed policies for the restaurant, and never supervised other employees. FAC ¶ 14.  Plaintiffs sufficiently allege that the California and federal exemptions do not apply to their employment.  Plaintiffs have therefore adequately pled a violation of federal and California laws requiring payment of overtime compensation.

> **b.      Waiting Time Penalties**

Cal. Lab. Code § 203 provides that "[i]f an employer willfully fails to pay, without abatement or reduction, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a).  Upon discharge, the employees' earned and unpaid wages are due within 72 hours.  Cal. Lab. Code § 201(a).

An employer effectuates a "discharge" not only when it fires an employee from ongoing employment, but also when it releases the employee upon completion of a particular job assignment or time duration for which he or she was hired.  *See Smith v. Super. Ct.*, 39 Cal. 4th 77, 92 (2006).  Additionally, the meaning of "willful" under Section 203 "is that an employer has intentionally failed or refused to perform an act which was required to be done."  *See Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 (2008).  "The employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due."  *Id.* (internal quotation marks omitted).  Pursuant to 8 Cal. Code. Reg. § 13520: "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due.  However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section

11

United States District Court
For the Northern District of California

1   203." "A 'good faith dispute' that any wages are due occurs when an employer presents a defense,

2   based in law or fact which, if successful, would preclude any recovery on the part of the

3   employee." *Id.*

4          In this case, Plaintiffs allege that "[a]t the time Defendants terminated Plaintiffs [sic]

5   employment, Defendants still owed Plaintiffs unpaid overtime wages." FAC ¶ 34.  Plaintiffs

6   further allege that "Defendants have failed and refused, and continue to fail and refuse, to pay the

7   amount due, thus making Defendants liable to Plaintiffs for penalties equal to thirty (30) days

8   wages." FAC ¶ 35.  Defendants have not presented a good faith dispute defense or any defense at

9   all.  Plaintiffs' allegations suffice for Plaintiffs to establish that Defendants have violated California

10  Labor Code Sections 201-203.

11              **c.       Failure to Provide Itemized Wage Statements**

12         Cal. Lab. Code § 226(a) mandates that an employer "furnish each of his or her employees .

13  . . an accurate itemized statement in writing showing [among other things] (1) gross wages earned,

14  (2) total hours worked by the employee, [and (3)] net wages earned."  Under subsection (e) of the

15  same provision: "[a]n employee suffering injury as a result of a knowing and intentional failure by

16  an employer to comply with [section 226(a)] is entitled to recover the greater of all actual damages

17  or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars

18  ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate

19  penalty of four thousand dollars ($4,000) . . ." Cal. Lab. Code § 226(e) (2011 version).

20         The Court notes that Section 226(e) was amended effective January 1, 2013.  2012 Cal.

21  Legis. Serv. Ch. 844 (A.B. 1744) (West).  Section 226(e) now defines "injury" in part to include

22  situations where an employer "fails to provide a wage statement."  Cal. Labor Code § 226(e)(2)(A).

23  Under the current version of Section 226(e), Plaintiffs' allegations that Plaintiffs never received

24  wage statements would, in and of themselves, establish an injury.

25         Plaintiffs' claims, however, arise from activities in 2009, 2010, and 2011.  Telles Decl. ¶¶

26  2, 20; Santiago Decl. ¶¶ 2, 18.  The previous version of Section 226(e) did not define "injury,"

27  providing instead only that an employee "suffering injury as a result of a knowing and intentional

28  failure by an employer to comply with subdivision (a) is entitled" to the damages formula

12

**United States District Court**
For the Northern District of California

1    described above.  Cal. Labor Code § 226(e) (2011 version).  California courts have interpreted the

2    previous version of Section 226(e) to require "an injury arising from the missing information" on

3    deficient wage statements.  *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142-43 (2011).

4    "[T]he deprivation of that information, standing alone is not a cognizable injury."  *Id.* (internal

5    quotations and citations omitted).  California courts and federal courts, however, have also held

6    that the injury requirement under the previous version of Section 226(e) may be "modest" or

7    "minimal."  *See Jaimez v. DAIOHS USA, Inc.*, 181 Cal. App. 4th 1286, 1306 (2010) ("While there

8    must be some injury in order to recover damages, a very modest showing will suffice."); *Escano v.*

9    *Kindred Healthcare Operating Co., Inc.*, No. CV 09-04778 DDP (CTx), 2013 WL 816146, at *11-

10   12 (C.D. Cal. Mar. 5, 2013) (listing cases describing the low threshold showing for injury and

11   finding "minimal" showing was sufficient).

12        The Court need not reach the issue of whether the 2013 amendments to Section 226(e)

13   apply retroactively because the Court finds that Plaintiffs' allegations suffice to state a claim under

14   the previous version of Section 226(e).  Plaintiffs allege that "[d]uring the course of Plaintiffs'

15   employment, Defendants consistently failed to provide Plaintiffs with adequate pay statements as

16   required by" California Labor Code § 226.  FAC ¶ 40.  Plaintiffs further allege that "Defendants

17   failed to provide such adequate statements willingly and with full knowledge of their obligations

18   under Section 226" and that "Defendants' failure to provide such adequate statements has caused

19   injury to the Plaintiffs."  FAC ¶¶ 41, 42.  Plaintiffs state in their respective declarations that

20   Defendants never provided pay stubs for the hours Plaintiffs worked.  Telles Decl. ¶ 18; Santiago

21   Decl. ¶ 16.

22        As to injury, Plaintiffs allege that "Defendants' failure to provide such adequate statements

23   has caused injury to the Plaintiffs."  FAC ¶ 42.  Given that a minimal showing suffices under the

24   earlier version of Section 226(e) and that the California Legislature in fact has now identified the

25   failure to provide a wage statement as an injury under Section 226(e), the Court finds that Plaintiffs

26   have adequately pleaded a claim for the failure to provide itemized wage statements.

27

28

Case No.: 11-CV-01470-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT WITH LEAVE TO AMEND

United States District Court

For the Northern District of California

### d.   Liability of Defendants

"Where an individual exercises control over the nature and structure of the employment relationship or economic control over the relationship, that individual is an employer within the meaning of the [FLSA], and is subject to liability." *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009). Plaintiffs allege that Defendants paid Plaintiffs' salaries (FAC ¶ 12), that Li supervised Plaintiffs (Santiago Decl. ¶ 3; Telles Decl. ¶ 3), and that Li assigned Plaintiffs' shifts (Santiago Decl. ¶ 8; Telles Decl. ¶ 8). Throughout the complaint, Plaintiffs assert that Defendants collectively engaged in the violations Plaintiffs allege. FAC ¶¶ 17, 19, 27, 36, 40, 41. Those well-pleaded allegations are taken as true now that default has been entered. *Fair Hous.*, 285 F.3d at 906. Defendants thus qualify as employers under FLSA. 29 U.S.C. § 203(d) (FLSA applies to "any person acting directly or indirectly in the interest of an employer in relation to an employee"); *Boucher*, 572 F.3d at 1091 (noting that under the FLSA, the definition of "employer" has an "expansive interpretation").

### 4.   Fourth *Eitel* Factor: The Sum of Money at Stake

Under the fourth factor, "the court must consider the amount of money at stake in relation to the seriousness of [a] [d]efendant's conduct." *PepsiCo Inc. v. Cal. Sec. Cans,* 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel,* 782 F.2d at 1471-72. "The Court considers [a] [p]laintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-CV-03594, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Default judgment is disfavored when a large amount of money is involved or unreasonable in light of the potential loss caused by the defendant's actions. *See id*.

Telles seeks to recover $43,414.00, and Santiago seeks to recover $35,506.15. Mot. Default. J. at 2. The respective sums include wages under Cal. Labor Code § 1194, liquidated damages under the FLSA, penalties under Cal. Labor Code § 203, damages under Cal. Labor Code § 226.7, and attorneys' fees. *Id.* Although not insubstantial sums, the amounts that Plaintiffs request are reasonable in light of the fact that Plaintiffs each worked over two years for Defendants

1    without receiving the overtime payments and accurate wage statements to which Plaintiffs were

2    entitled.

3         **5.    Fifth, Sixth, *Eitel* Factors: Potential Disputes of Material Fact
               and Excusable Neglect**

4

5         The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case.

6    Defendants have failed to make an appearance in this case.  The Court therefore takes the

7    allegations in the complaint as true.  *Fair Hous*., 285 F.3d at 906.  Given that posture, the Court

8    finds that disputes of material facts are unlikely.

9         The sixth *Eitel* factor considers whether failure to appear was the result of excusable

10   neglect.  Summons were issued to all Defendants on October 17, 2011.  ECF No. 14.  The

11   summons for Defendants were returned executed on October 20, 2011.  ECF Nos. 15-19.  Nothing

12   in the record before the Court indicates that the service was improper.  Defendants, however, have

13   not made an appearance in this case.  Nothing before the Court suggests that this failure to appear

14   was the result of excusable neglect.

15        The fifth and sixth *Eitel* factors thus weigh in favor of entry of default judgment.

16        **6.    Seventh *Eitel* Factor: Policy Favoring Decision on the Merits**

17        While the policy favoring decision on the merits generally weighs strongly against

18   awarding default judgment, district courts have regularly held that this policy, standing alone, is

19   not dispositive, especially where a defendant fails to appear or defend itself.  *See, e.g*., *Craigslist,*

20   *Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *United States v. Lyon*,

21   No. CIV S-10-2549 GEB EFB, 2011 WL 2226308, at *3 (E.D. Cal. June 7, 2011).  Although

22   Defendants were served almost two years ago (ECF Nos. 15-19), Defendants have never made an

23   appearance nor have Defendants challenged the entry of default against them.  The likelihood of

24   the case proceeding to a resolution on the merits is unlikely.  The Court finds that the seventh *Eitel*

25   factor is outweighed by the other six factors that weigh in favor of default judgment.  *See United*

26   *States v. Ordonez*, No. 10-01921, 2011 WL 1807112, at *3 (E.D. Cal. May 11, 2011).  The Court

27   therefore finds that default judgment is appropriate in this case.

28

Case No.: 11-CV-01470-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT WITH LEAVE TO AMEND

*United States District Court*
*For the Northern District of California*

**B.      Damages**

A plaintiff seeking default judgment "must also prove all damages sought in the complaint." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)).  Rule 55 does not require the court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment.  *Action S.A. v. Marc Rich & Co. Inc.*, 951 F.2d 504, 508 (2nd Cir. 1991).  In support of their request for class damages, Plaintiffs have provided declarations from Telles, Santiago, and Plaintiffs' counsel.  ECF Nos. 42-3, 42-2, 42-1.

Where an employer fails to maintain accurate payroll records, an employee carries his burden under the FLSA if he shows he performed work for which he was improperly compensated and produces some evidence to show the amount and extent of that work "as a matter of just and reasonable inference."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), superseded by statute on other ground, Portal–to–Portal Act, 61 Stat. 86–87; *see also McLaughlin v. Seto*, 850 F.2d 586, 589 (9th Cir. 1988); *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986).  The Ninth Circuit has approved "approximated awards where plaintiffs can establish, to an imperfect degree of certainty, that they 'have performed work and have not been paid in accordance with the FLSA.'"  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 914-15 (9th Cir. 2003) (citing *Brock*, 790 F.2d at 1448).  "In such instances, the only uncertainty is the amount of damage, not the fact that damages are due.  Where an approximate award based on reasonable inferences forms a satisfactory surrogate for unquantified and unrecorded actual times, an approximated award is permissible."  *Id.* (internal quotation marks, citations, and alterations omitted).

**1.      Failure to Pay Overtime Under California Law**

Cal. Lab. Code § 1194(a) states that "any employee receiving less than . . . the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this . . . overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."   "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."  Cal. Lab. Code § 510(a).

United States District Court
For the Northern District of California

16

1  "For the purposes of computing the overtime rate of compensation required to be paid to a

2  nonexempt full-time salaried employee, the employee's regular hourly rate shall be 1/40th of the

3  employee's weekly salary."  Cal. Lab. Code § 515(d)(1).  "Payment of a fixed salary to a

4  nonexempt employee shall be deemed to provide compensation only for the employee's regular,

5  nonovertime hours, notwithstanding any private agreement to the contrary."  Cal. Lab. Code §

6  515(d)(2).

7          Where California law is not otherwise explicit, California courts looks to federal law in

8  defining and interpreting "regular rate" of pay.  *See Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d

9  1122, 1129 (C.D. Cal. 2011); *Zator v. Sprint/United Mgmt. Co.*, No. 09cv0935–LAB (MDD), 2011

10  WL 1157527, at *3 (S.D. Cal. Mar. 29, 2011) ("California looks to the Fair Labor Standards Act to

11  determine what . . . constitutes the regular rate of pay for overtime purposes"); *Advanced–Tech*

12  *Sec. Servs., Inc. v. Super. Ct.*, 163 Cal. App. 4th 700, 707 (2008) (California courts look to

13  Department of Labor regulations interpreting the "regular rate" of pay under the FLSA to interpret

14  that term as used in California Labor Code § 510); DLSE Manual § 49.1.2 ("In not defining the

15  term 'regular rate of pay,' the Industrial Welfare Commission has manifested its intent to adopt the

16  definition of 'regular rate of pay' set out in the [FLSA].").

17          The only evidence before the Court is Plaintiffs' sworn declarations regarding the number

18  of hours Plaintiffs worked and the amount of money Defendants paid in compensation for those

19  hours.  The Court however will not penalize Plaintiffs for the failure to produce any payment

20  records because Defendants failed to provide Plaintiffs with pay stubs or other records of Plaintiffs'

21  wages.  *Ulin v. Alaea-72, Inc.*, No. C-09-3160-EDL, 2011 WL 723617, at *13 (N.D. Cal. Feb. 23,

22  2011) (where "very few records were kept," overtime compensation "must necessarily be

23  approximated").  Since Defendants have failed to appear in this litigation, Plaintiffs' evidence

24  stands unrefuted.

25                          a.      **Telles' Unpaid Overtime Wages**

26          Telles calculates his unpaid overtime compensation amount by totaling the amount in

27  salary that Telles made in the first year of his employment and then dividing that amount by 52 to

28  arrive at a weekly salary amount.  Mot. Default J. at 14.  Telles' calculation fails to account for the

17

change in his salary and to account for the fact that, in the second year of his employment, Telles worked consistently at a higher salary rate.  Because of these flaws in Telles' calculation, the Court does not adopt his methodology for determining the unpaid overtime compensation.

To determine Telles' regular rate, the Court first must determine the amount Telles earned each week of his employment.  Cal. Labor Code § 515(d)(1).  The Court then must divide that weekly salary by 40 to determine Telles' "regular rate."  *Id.*  Telles is entitled to one and one-half times his "regular rate" for every hour over 40 hours that Telles worked for a given week.  Cal. Labor Code § 510(a); § 515(d)(2).

Telles states that he was paid a salary of $900 every two weeks for the first six months of his employment.  Telles Decl. ¶ 12.  Thus, for the first six months of Telles' employment, Telles' weekly salary was $450.  Dividing Telles' weekly salary by 40, the Court arrives at $11.25 as Telles' regular rate.  Telles' overtime rate is $16.88 per hour (i.e. $11.25 x 1.5).  According to Telles, he worked 55.25 hours per week or 15.25 hours per week of overtime.[2]  Telles Decl. ¶ 9.  By multiplying the number of hours of overtime by the overtime rate (i.e. 15.25 x $16.88), the Court finds that Telles is entitled to $257.42 in unpaid overtime for each week during that six month period.  Because there are 26 weeks in a six-month period, the Court finds that Telles is entitled to $6,692.92 for the first six months of his employment.

Telles states that for the remainder of his employment he was paid $950 twice per month.  Telles Decl. ¶ 13.  California law does not provide a method for translating a semimonthly salary into a weekly salary, so the Court looks to federal law.  *See Alonzo*, 832 F. Supp. 2d at 1129.  To determine a weekly salary from a semimonthly salary, the Court multiplies the salary times 24 and divides that total by 52.  29 C.F.R. § 778.113(b) ("A semimonthly salary is translated into its equivalent weekly salary by multiplying by 24 and dividing by 52.").  Using that method, the Court finds Telles' weekly salary for the remainder of his employment to be $438.46.  Dividing Telles' weekly salary by 40, the Court arrives at $10.96 as Telles' hourly rate.  Telles' overtime rate is $16.44 (i.e. $10.96 x 1.5).  Telles states that he continued to work 55.25 hours per week through

---

[2] In the Motion, Telles asserts that he worked 55.15 hours.  Mot. Default J. at 14.  Telles, however, worked 55 hours and 15 minutes, Telles Decl. ¶ 9, which is 55.25 hours.

Case No.: 11-CV-01470-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT WITH LEAVE TO AMEND

1   the rest of his employment.  Telles Decl. ¶ 9.  By multiplying the number of hours of overtime by

2   the overtime rate (i.e. 15.25 x $16.44), the Court finds that Telles is entitled to $250.71 in unpaid

3   overtime for each week during the remainder of his employment.  Telles worked at the new rate for

4   80 weeks.[3]  The Court thus finds that Telles is entitled to $20,056.80 in unpaid overtime

5   compensation for the remainder of his employment.

6          In total, the Court finds that Telles is entitled to $26,749.72 in unpaid overtime

7   compensation.

8                    **b.      Santiago's Unpaid Overtime Compensation**

9          Santiago likewise totaled all of his salary for the first year of his employment and divided

10  that amount by 52 to reach a weekly salary amount.  Mot. Default J. at 13.  As with Telles'

11  calculations, Santiago fails to account for the difference in his salary or that during the second and

12  third years of his employment he worked consistently at the higher rate.  The Court similarly

13  declines to adopt Santiago's methodology.

14         The Court instead employs the same methodology to determine the amount of unpaid

15  overtime compensation to which Santiago is entitled.  The Court thus begins by determining the

16  amount Santiago earned each week of his employment.  The Court then divides that weekly salary

17  by 40 to establish Santiago's "regular rate."  Cal. Labor Code § 515(d)(1).  Santiago is entitled to

18  one and one-half times his "regular rate" for every hour over 40 hours that Santiago worked for a

19  given week.  Cal. Labor Code § 510(a); § 515(d)(2).

20         Santiago states that he was paid $650 every two weeks for the first month of his

21  employment.  Santiago Decl. ¶ 12.  Santiago's weekly salary for that period was $325.  Dividing

22  that amount by 40, the Court arrives at $8.13 as Santiago's regular hourly rate.  Santiago's

23  overtime rate is $12.20 (i.e. $8.13 x 1.5).  According to Santiago, he worked 55.25 hours per week

24  or 15.25 hours of overtime per week.[4]  Santiago Decl. ¶ 9.  By multiplying the number of hours of

---

[3] In the Motion, Telles states that he worked 107 weeks, but from the Court's calculations, Telles worked only 106 full weeks between his start date of January 30, 2009 and his end date of February 12, 2011.  Telles Decl. ¶ 9.

[4] In the Motion, Santiago asserts that he worked 55.15 hours.  Mot. Default J. at 13.  Santiago, however, worked 55 hours and 15 minutes, Santiago Decl. ¶ 9, which is 55.25 hours.

Case No.: 11-CV-01470-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT WITH LEAVE TO AMEND

United States District Court
For the Northern District of California

overtime times the overtime rate (i.e. 15.25 x $12.20), the Court finds that Santiago is entitled to $186.05 in unpaid overtime for each week during that six-month period.  Because there are 4 weeks in a month, the Court finds that Santiago is entitled to $744.20 for the first month of his employment.

Santiago states that he was paid $700 every two weeks for the remainder of his employment.  Santiago Decl. ¶ 13.  Santiago's weekly salary for that period was $350.  Dividing that amount by 40, the Court arrives at $8.75 as Santiago's regular hourly rate.  Santiago's overtime rate therefore is $13.13 (i.e. $8.75 x 1.5).  According to Santiago, he continued to work 55.25 hours per week or 15.25 hours of overtime per week through the remainder of his employment with Defendants.  Santiago Decl. ¶ 9.  By multiplying the number of hours of overtime times the overtime rate (i.e. 15.25 x $13.13), the Court finds that Santiago is entitled to $200.23 in unpaid overtime for each week during the remaining period of his employment.  Santiago worked at the new rate for 116 weeks.  The Court finds that Santiago is entitled to $23,226.68 in unpaid overtime compensation for that 116 weeks.

In total, the Court finds that Santiago is entitled to $23,970.88 in unpaid overtime compensation.

### 2.     Liquidated Damages Under the FLSA

Plaintiffs also seek an award of liquidated damages under the FLSA using the FLSA's method of calculating unpaid overtime compensation for Defendants' willful failure to pay overtime.  Under FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  Section 207 prohibits any employer from employing any of his employees "for a workweek longer than forty hours unless such employee receives compensation for those hours at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).

Section 216(b) mandates that when overtime is not properly provided to employees, liquidated damages must be additionally awarded to such employees in the amount equal to the

20

1   amount already owed.  29 U.S.C. § 216(b).  Section 260, however, makes liquidated damages

2   discretionary where the employer proves that the failure to pay overtime was both in good faith and

3   based upon such reasonable grounds that it would be unfair to impose liquidated damages upon the

4   employer.  29 U.S.C. § 260.  "Under 29 U.S.C. § 260, the employer has the burden of establishing

5   subjective and objective good faith in its violation of the FLSA."  *Local 246 Utility Workers Union*

6   *of America v. S. Cal. Edison Co.*, 83 F.3d 292, 297–98 (9th Cir. 1996).

7            Here, Defendants have not established good faith or reasonable grounds for not paying

8   overtime to Plaintiffs.  As indicated above, the Court has already awarded unpaid overtime wages,

9   and so Plaintiffs are also entitled to liquidated damages.  *See Rivera v. Rivera*, No. 10-CV-01345-

10  LHK, 2011 WL 1878015, at *6 (N.D. Cal. May 17, 2011) (awarding liquidated damages for unpaid

11  overtime compensation under Cal. Labor Code § 1194).

12           Plaintiffs seek liquidated damages in amounts equal to the amount of unpaid overtime

13  compensation to which Plaintiffs are entitled under the FLSA.  The FLSA requires that the Court

14  first determine Plaintiffs' weekly salaries.  29 C.F.R. § 778.113(b).  The FLSA divides the weekly

15  salary by the total number of hours worked to arrive at the employee's regular hourly rate.  29

16  C.F.R. § 778.113(a); 29 C.F.R. § 778.109.  Under that calculation, Plaintiffs are deemed to have

17  been paid the regular rate for all hours worked and are entitled only to 50% of the regular rate per

18  hour of overtime worked.  29 C.F.R. § 778.113(a).  The regular rate cannot be less than the

19  statutory minimum.  29 C.F.R. § 778.107.  California's minimum wage of $8.00 is greater than the

20  federal standard of $7.25. *Compare* Cal. Lab. Code § 1182.12 *with* 29 U.S.C. § 206(a)(1)(C).  The

21  Court therefore applies California's rate as the minimum hourly rate against which overtime

22  compensation must be determined.  29 U.S.C. § 218; 29 C.F.R. § 778.5; *Pac. Merchant Shipping*

23  *Ass'n v. Aubry*, 918 F.2d 1409, 1426-27 (9th Cir. 1990) (holding California's more protective labor

24  laws apply when FLSA is less protective); *Lanzetta v. Florio's Enterp., Inc.*, No. 08 Civ.

25  6181(DC), 2011 WL 3209521, at *3 (S.D.N.Y. July 27, 2011) (Chin, J.) (finding higher state

26  minimum wage should be used as "regular rate" when calculating FLSA liquidated damages).

27

28

**United States District Court**
For the Northern District of California

21

Case No.: 11-CV-01470-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT WITH LEAVE TO AMEND

1

###### a.    Telles

2    The Court has already determined that for the first six months of Telles' employment, his

3    weekly salary was $450.  Telles states that he worked 55.25 hours every week during that period.

4    Telles Decl. ¶ 9.  Dividing $450 by 55.25 as required by the FLSA, the Court arrives at $8.14 as

5    Telles' regular rate.  Telles is entitled to 50% of that rate, or $4.07, for the overtime that Telles

6    worked each week.  Multiplying that rate times the number of hours of overtime (i.e. $4.07 x

7    15.25), the Court finds Telles is entitled to $62.07 for each week of this six-month period.  For the

8    26 weeks at issue in that six month period, the Court further finds that Telles was denied $1,613.82

9    in unpaid overtime compensation.  The Court finds that the same amount should be awarded as

10    liquidated damages under the FLSA.

11    The Court has determined that Telles earned a weekly salary of $438.46 for the remainder

12    of his employment with Defendants.  Dividing by the 55.25 hours Telles states that he worked

13    during that time (Telles Decl. ¶ 9), the Court arrives at $7.94 as Telles' regular hourly rate.

14    Because $7.94 is below California's minimum hourly wage of $8.00, the Court uses $8.00 as

15    Telles' regular hourly rate.  Telles is entitled to 50% of his regular hourly rate, or $4.00, for the

16    overtime that Telles worked each week.  Multiplying that rate by the number of hours of overtime

17    (i.e. $4.00 x 15.25), the Court finds Telles is entitled to $61.00 for each week of the remainder of

18    his employment.  For the 80 weeks at issue, the Court further finds that Telles was denied $4,880

19    in unpaid overtime compensation.  The Court finds that the same amount should be awarded as

20    liquidated damages under the FLSA.

21    In total, the Court thus awards to Telles $6,493.82 in liquidated damages.

22

###### b.    Santiago

23    The Court already has determined that for the first month of his employment, Santiago

24    earned $325.00 as his weekly salary.  Dividing Santiago's weekly salary by the 55.25 hours that

25    Santiago states that he worked during that period, the Court arrives at $5.88 as Santiago's hourly

26    rate.  Because $5.88 is below California's minimum hourly wage of $8.00, the Court uses $8.00 as

27    Santiago's regular hourly rate.  Santiago is entitled to 50% of his regular hourly rate, or $4.00, for

28    the overtime that Santiago worked each week.  Multiplying that rate by the number of hours of

**United States District Court**
**For the Northern District of California**

22

**United States District Court**
For the Northern District of California

overtime (i.e. $4.00 x 15.25), the Court finds that Santiago is entitled to $61.00 for each week of the first month of his employment.  For the four weeks at issue, the Court further finds that Santiago was denied $244.00 in unpaid overtime compensation.  The Court finds that the same amount should be awarded as liquidated damages under the FLSA.

The Court also found that Santiago was paid a weekly salary of $350.00 per week for the remainder of his employment with Defendants.  Dividing Santiago's weekly salary by the 55.25 hours that Santiago states that he worked during the remainder of his employment, the Court arrives at $6.33 for his regular hourly rate.  As with Santiago's earlier rate, this rate is below California's minimum hourly wage of $8.00, and thus the Court uses $8.00 as Santiago's regular hourly rate.  Santiago is entitled to 50% of his regular hourly rate, or $4.00, for the overtime that Santiago worked each week.  The Court again multiplies that rate by the number of hours of overtime (i.e. $4.00 x 15.25) to arrive at $61.00 as the weekly unpaid overtime compensation to which Santiago is entitled.  For the 116 weeks at issue, the Court further finds that Santiago was denied $7,076.00 in unpaid overtime compensation.  The Court finds that the same amount should be awarded as liquidated damages under the FLSA.

In total, the Court thus awards Santiago $7,320.00 in liquidated damages.

### 3.      Failure to Pay Waiting Time Penalties

Cal. Lab. Code § 203 provides that "[i]f an employer willfully fails to pay, without abatement or reduction, . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Upon discharge, the employees' earned and unpaid wages are due within 72 hours.  Cal. Lab. Code § 201(a).  Pursuant to 8 Cal. Code. Reg. Section 13520: "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due.  However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203.  A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee."

23

United States District Court
For the Northern District of California

1    Here, according to the evidence provided, Plaintiffs were not paid their overtime wages at

2    all, let alone within 72 hours of discharge as required by California statute.  Defendants have not

3    provided any justification for noncompliance or raised a "good faith dispute" that wages are due to

4    Plaintiffs.  Accordingly, Plaintiffs each are entitled to penalties in the amount of Plaintiffs'

5    respective daily wages for the 30 days following the end of their employment with Defendants.

6    In determining the appropriate "waiting time" penalty, "the critical computation required by

7    section 203 is the calculation of a daily wage rate, which can then be multiplied by the number of

8    days of nonpayment, up to 30 days."  *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998); *see also*

9    *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1018 (N.D. Cal. 2010).

10    To determine their respective daily wages, Plaintiffs use the hourly rates Plaintiffs

11    calculated for their Section 1147 unpaid overtime compensation claims and multiply the respective

12    hourly rates by eight hours to arrive at a daily wage.  Reducing a salary to an hourly rate and then

13    multiplying by 8 (i.e. the hours of work in a day) to arrive at the daily wage is an acceptable

14    method for calculating the daily wage for purposes of Section 203.  *See Drumm*, 695 F. Supp. 2d at

15    1019 (calculating daily wage from annual salary by reducing to hourly wage and multiplying by 8).

16    The Court uses Plaintiffs' respective last hourly rates.  *See* Cal. Lab. Code § 203(a) ("[T]he wages

17    of the employee shall continue as a penalty.").

18    The Court begins with Telles' entitlement to penalties.  As explained above, the Court

19    calculated under California law Telles' regular hourly rate at the time that Telles' employment with

20    Defendants ended as $10.96.  To arrive at a daily rate of $87.68, the Court multiplies Telles' hourly

21    rate by 8.  Because Telles has yet to receive his unpaid overtime compensation, the appropriate

22    penalty is Telles' daily rate times the 30 day statutory limit, or $2,630.40.

23    The Court turns to Santiago's entitlement to penalties.  As detailed above, the Court

24    calculated Santiago's hourly rate under California law at the time that his employment ended as

25    $8.75.  To arrive at a daily rate of $70.00, the Court multiplies Santiago's hourly rate by 8.

26    Because Santiago has yet to receive his unpaid overtime compensation, the appropriate penalty is

27    Santiago's daily rate times the 30 day statutory limit, or $2,100.00.

28

Case No.: 11-CV-01470-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT WITH LEAVE TO AMEND

1  The Court thus finds that judgment in favor of Telles in the amount of $2,630.40 and in

2  favor of Santiago in the amount of $2,100.00 is warranted.

3  **4.    Failure to Provide Itemized Wage Statements**

4  Cal. Lab. Code § 226(a) mandates that an employer "furnish each of his or her employees .

5  . . an accurate itemized statement in writing showing (1) gross wages earned, [and] (2) total hours

6  worked by the employee . . . ."  Under subsection (e) of the same provision: "[a]n employee

7  suffering injury as a result of a knowing and intentional failure by an employer to comply with

8  [section 226(a) ] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the

9  initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each

10  violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars

11  ($4,000) . . . ."  Cal. Lab. Code § 226(e).

12  Because the actual damages from the failure to provide statements cannot be ascertained,

13  the Court awards statutory damages.  *See Rivera*, 2011 WL 1878015, at *9 (awarding statutory

14  damages at default judgment where actual damages could not be calculated).  Based on Telles'

15  declaration, Telles worked 107 weeks without receiving a wage statement.  Telles Decl. ¶¶ 2, 20.

16  Telles states that his pay periods were every two weeks for the first six months and bi-monthly

17  thereafter.  Telles Decl. ¶¶ 12, 13.  For the initial two-week pay period, the failure to provide a

18  wage statement results in a $50 damage award.  For the subsequent 50 pay periods,[5] the failure to

19  provide wage statements results in damages of $100 damages per pay period, which totals $5,000.

20  Based on Santiago's declaration, Santiago worked 120 weeks.  Santiago Decl. ¶¶ 2, 18.  Santiago

21  states that he was paid every two weeks throughout his time working for Defendants.  Santiago

22  Decl. ¶¶ 12, 13.  For the first two-week pay period, the failure to provide a wage statement results

23  in a $50 damage award.  For the subsequent 60 pay periods, the failure to provide wage statements

24  results in damages of $100 per pay period, which totals $6,000.  Because Section 226(e) caps

25  awards at $4,000, and Telles and Santiago each are entitled to amounts in excess of $4,000, the

26  Court enters judgment for Telles in the amount of $4,000 and Santiago in the amount of $4,000.

27

28

---

[5] For the period of February 13, 2009 to July 1, 2009 (the bi-weekly period), the Court calculates 11 pay periods.  For the period of July 1, 2009 to February 12, 2011 (the semi-monthly period), the Court calculates 39 pay periods.

Case No.: 11-CV-01470-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT WITH LEAVE TO AMEND

**5.      Attorneys' Fees and Costs**

Plaintiffs are entitled to attorney's fees under the FLSA and California law.  29 U.S.C §

216(b) (2006); Cal. Lab. Code §§ 218.5, 1194; *see also Newhouse v. Robert's Ilimare Tours, Inc.*,

708 F.2d 436, 441 (9th Cir. 1983) ("The FLSA grants prevailing plaintiffs a reasonable attorney's

fee."); *Drumm*, 695 F. Supp. 2d at 1018 (noting that under California law, awarding attorney's fees

is "mandatory" in unpaid wage claims).

Courts in the Ninth Circuit calculate an award of attorney's fees using the lodestar method,

whereby a court multiplies "the number of hours the prevailing party reasonably expended on the

litigation by a reasonable hourly rate."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th

Cir. 2008) (citation omitted).  A party seeking attorney's fees bears the burden of demonstrating

that the rates requested are "in line with the prevailing market rate of the relevant community."

*Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006).  Generally, "the relevant

community is the forum in which the district court sits."  *Camacho*, 523 F.3d at 979 (citing *Barjon

v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).  Typically, "[a]ffidavits of the plaintiffs' attorney

and other attorneys regarding prevailing fees in the community, and rate determinations in other

cases . . . are satisfactory evidence of the prevailing market rate."  *U. Steelworkers of Am. v. Phelps

Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

The Court has reviewed the declaration presented by Plaintiffs' counsel regarding his

hourly rate and the number of hours expended in this litigation.  The Court finds Plaintiffs'

counsel's hourly rate of $300 per hour reasonable given Plaintiffs' counsel's sixteen years of

experience.  Mot. Default J. Ex. A ¶ 12.  As to the hours billed, the Court finds Plaintiffs' counsel's

request for fees for 2.33 hours for "Review of Pay Records Preliminary Audit" unwarranted given

Plaintiffs' declarations that Plaintiffs never received any pay records.  *See* Santiago Decl. ¶ 10;

Telles Decl. ¶ 10.  The Court therefore does not award attorneys' fees for those hours.  With the

reduction of the 2.33 hours, the total number of hours for prosecuting the case is 12.25.  Mot.

Case No.: 11-CV-01470-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT WITH LEAVE TO AMEND

1    Default J. Ex. A ¶ 12.  The Court finds these hours reasonable for the tasks performed.  The Court

2    therefore awards $3,675.00 in attorneys' fees, divided evenly between Plaintiffs.

3            Plaintiffs also request $430.00 in costs for the filing fee and service fees.  Mot. Default J.

4    Ex. A ¶ 14.  The Court finds these costs reasonable and therefore awards $430.00 in costs, divided

5    evenly between Plaintiffs.

6                                    **IV.    CONCLUSION**

7            The Court finds default judgment in Plaintiffs' favor is warranted and enters judgment

8    against Defendants in the following amounts:

9      • Telles

10         o  Unpaid Overtime Compensation: $26,749.72

11         o  Liquidated Damages:  $6,493.82

12         o  Waiting Time Penalties:  $2,630.40

13         o  Failure to Provide Itemized Wage Statements: $4,000.00

14         o  Attorneys' Fees:  $1,812.00

15         o  Costs:  $215.00

16         o  TOTAL:  $41,900.94

17     • Santiago

18         o  Unpaid Overtime Compensation: $23,970.88

19         o  Liquidated Damages: $7,320.00

20         o  Waiting Time Penalties:  $2,100.00

21         o  Failure to Provide Itemized Wage Statements:  $4,000.00

22         o  Attorneys' Fees:  $1,812.00

23         o  Costs:  $215.00

24         o  TOTAL:  $39,417.88

25   **IT IS SO ORDERED.**

26   Dated:   9/16/2013

27                                          LUCY H. KOH
                                            United States District Judge

28

Case No.: 11-CV-01470-LHK
ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT WITH LEAVE TO AMEND

*United States District Court*
*For the Northern District of California*